UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| MALEAH TOOLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| v. ) | No. 3:10-CV-11 |
| ) | (VARLAN/GUYTON) |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 13 and 14] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 20 and 21]. Plaintiff Maleah Tooley seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On May 16, 2007, the Plaintiff filed an application for a period of disability, disability insurance benefits, and supplemental security income, claiming a period of disability which began in March 2006. [Tr. 91]. After her application was denied initially and also denied upon reconsideration, the Plaintiff requested a hearing. On July 15, 2009, a hearing was held before an ALJ to review determination of Plaintiff's claim. [Tr. 19-41]. On September 16, 2009, the ALJ

found that the Plaintiff was not disabled. The Appeals Council denied the Plaintiff's request for review; thus, the decision of the ALJ became the final decision of the Commissioner. The Plaintiff now seeks judicial review of the Commissioner's decision.

**I.     ALJ FINDINGS**

>   The ALJ made the following findings:
>
>   1. The claimant met the insured status requirements of the Social Security Act through March 31, 2009.
>
>   2. The claimant has not engaged in substantial gainful activity since March 15, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
>   3. The claimant has the following severe impairments: major depressive disorder, post traumatic stress disorder, nicotine dependence, hypertension, and obesity (20 CFR 404.1520(c)) and 416.920(c)).
>
>   4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1526, 416.920(d), 416.925 and 416.926).
>
>   5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). She can remember/understand simple instructions and will have some, but not substantial difficulty adapting to change, maintaining concentration, persistence, and pace, interacting with others, and understanding/remembering detailed instructions.
>
>   6. The claimant is capable of performing past relevant work as a sewing machine operator and a cashier/hostess. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

> 7. The claimant has not been under a disability, as defined in the Social Security Act, from March 15, 2006 through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

[Tr. 11-18].

## II. DISABILITY ELIGIBILITY

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering

> from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.

On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV.   MEDICAL EVIDENCE[1]

Starting in June of 2003, based on the recommendation of her physician, Dr. Vaughn Hall ("Dr. Hall"), the Plaintiff visited a nephrologist, Dr. Naseem Siddiqi ("Dr. Siddiqi"), for a medical examination. [Tr. 206]. Based on this initial examination he diagnosed her with (1) hypertension;

---

[1] The Plaintiff includes medical information in her brief for symptoms or treatment that predate both her filing of her application and her alleged onset date. In addition, the Plaintiff has alleged only one allegation of error, see infra at 7. Thus, while the Court has reviewed the Plaintiff's statement of medical history, the Court has condensed the pertinent medical history in this Report and Recommendation.

(2) an atrophic right kidney; (3) fibromyalgia; and (4) migraines. (R. 208). From 2003 to 2005, Dr. Siddiqi had four follow-up visits with Plaintiff.

In 2004, Dr. Joseph Deleese ("Dr. Deleese"), a cardiologist, prescribed an ambulatory monitor and adjusted her medication: Diovan 80 mg, Metoprolol 100 mg, and a new drug Dyazide. (R. 244). He later diagnosed her with liable hypertension. [Tr. 242]. In December 2006, she had a follow up visit concerning her blood pressure. [Tr. 237]. She told Dr. Deleese that she had stopped taking Diovan because TennCare refused to pay for the medication. [Tr. 237]. He found her blood pressure to be "poorly controlled" and restarted her prescription for Diovan 80mg. [Tr. 237].

During 2007 and through early 2009, Plaintiff was frequently treated at Saint Mary's Medical Center. [Tr. 247-258, 370-442, 456; 483; 484; 556]. In September and October of 2007 she was admitted primarily for bodily pain and kidney issues. During the October 5, 2007 admission, Plaintiff was placed on a hydration and IV Levaquin "with symptomatic improvement." [Tr. 416]. Upon her discharge she was diagnosed with conditions including a urinary tract infection, fibromyalgia, and acute renal failure.

On January 9, 2008 she was admitted for reports of low blood pressure, swollen ankles and legs, and a speech problem. [Tr. 376-84]. She was admitted again the following December for high fever, severe pain, and tightness in her chest. [Tr. 547]. On January 11, 2009, Plaintiff was admitted to the emergency room at St. Mary's for arm, shoulder, and breast area pain. [Tr. 529]. In March 2008, she was admitted claiming severe pain and numbness on her right side. [Tr. 491].

Plaintiff has been receiving psychological treatment since June 2006 from Cherokee Health Systems, with providers including Jenny Macfie, Ph.D., ("Dr. Macfie"), though she has not followed the treatment suggestions that she attend regular therapy sessions. [Tr. 332-351; 447-455; 577-615].

6

In her application for disability, the Plaintiff listed over a dozen medications, which she took daily, for anxiety, depression, mood swings, sleep, blood pressure, and a variety of other ailments. [Tr. 190-91].

Of particular note, she stated that she required oxygen, "as needed[,] sleep with all night." [Tr. 191]. The Plaintiff stated that she was first prescribed the supplemental oxygen in March 2009, by Dr. Fred Bennett ("Dr. Bennett"). In her brief, the Plaintiff explains that on February 24, 2009, Dr. Bennett performed an oximetry test in to evaluate her respiratory system. [Doc. 14 at 2-3, citing Tr. 570]. Based on the results of his testing,[2] Dr. Bennett indicated that the Plaintiff required a portable oxygen tank at two (2) liters per minute.

## V. POSITIONS OF THE PARTIES

On appeal, the Plaintiff makes a single allegation of error. She argues that the ALJ's decision fails to acknowledge the supplemental oxygen prescribed by Dr. Bennett. She maintains that the ALJ did not provide a rationale for his finding as to the oxygen, and thus, she alleges that the medical need for oxygen was erroneously excluded from the ALJ's residual functional capacity determination. [Doc. 14 at 10].

The Commissioner responds that ALJ provided a "good reason" for rejecting the need for supplemental oxygen as grounds for disability. Specifically, he found that the impairment did not

---

[2]During this examination there were noted ten desaturation events over three minutes in duration, as well as twenty-five desaturation events that were less than three minutes in duration. [Tr. 570]. The average length of a desaturation event that was greater than ten seconds and less than three minutes was 59.7 seconds. [Tr. 570].

meet the duration requirement. [Doc. 21 at 1, citing Tr. 13]. Accordingly, the Commissioner maintains that the ALJ's decision was supported by substantial evidence and was not procedurally defective.

VI.     ANALYSIS

In the hearing before the ALJ, the ALJ noticed that Plaintiff had an oxygen tank at the July 2009 hearing. [Tr. 28]. Plaintiff responded to this observation by stating that she had, "just been put on that the last five months". [Tr. 28]. She said that the oxygen tank was prescribed due to her hypoxia and also for her anxiety. [Tr. 28]. Plaintiff testified that recently, during the past two weeks, she underwent a lung function test. [Tr. 29]. Plaintiff said she "failed" the test, and noted that her doctors were in the process of checking a number of different things. [Tr. 29].

When asked if she needed the oxygen all the time, Plaintiff answered that she needed it when she was under stress, as she was at the hearing, and/or when she was very nervous. [Tr. 29]. Plaintiff also testified that Dr. Bennett prescribed the oxygen, and she stated that she had a big tank at home. [Tr. 29]. The ALJ asked, "[H]ow often do you find yourself using this oxygen?" [Tr. 29]. Plaintiff answered that she used the oxygen whenever she felt really stressed out and she explained that, presently, she felt that she was under a lot of stress. [Tr. 29].

In discussing the Plaintiff's medical history and severe impairments, the ALJ explained, "Although the claimant has been prescribed oxygen since April 2009, it does not meet the duration requirement . . . ." Thus, the ALJ concluded that the supplemental oxygen did not constitute a severe impairment, and ultimately, the ALJ determined, based in part on the testimony of the vocational expert, that the Plaintiff could perform two of her past relevant jobs: her job as a sewing machine

8

operator and her job as a cashier/hostess. [Tr. 18].

In order for a claimant to be found to be disabled, a medically-determinable, disabling impairment must have lasted or be expected to last twelve consecutive months. 20 C.F.R. §§ 1505(a), 416.905(a), 404.1509, and 416.909404; see also Simpson v. Comm. of Soc. Sec., 344 Fed. App'x 181, 1887 (6th Cir. 2009).

In the instant case, the Plaintiff has done nothing more than suggest that she had been seen for cardiac complaints or for complaints of shortness of breath prior to February 2009. All the evidence in the record supports the ALJ's determination that the need for supplemental oxygen, as prescribed in February 2009, had not lasted twelve months as of September 16, 2009, the date of the ALJ's opinion. Seven months is not twelve months, and the applicable statutory provisions are clear that demonstrating a condition that has lasted or will last twelve months, and nothing less, is the Plaintiff's burden. The Plaintiff failed to carry her burden before the ALJ, and she has failed to direct this Court to evidence undermining the ALJ's decision.

Even if the duration requirement were met, the Court finds that the Plaintiff did not present evidence to the ALJ that would necessitate a finding of disability. The Plaintiff did not demonstrate that she would need oxygen at work. The Plaintiff maintains that if the ALJ had properly considered the supplemental oxygen, a finding of disability would have been necessitated by the vocational expert's finding that no jobs would exist for a person who needs to bring portable oxygen to work. [Tr. 40]. The Plaintiff, however, stated that she needed the oxygen occasionally – during times of stress and while sleeping. These subjective complaints alone would not necessarily support a finding of disability, because they do not, alone, entail disruption of work and because they are not objective medical evidence. Thus, even if the supplemental oxygen requirement was considered a severe

9

disability, it would not necessarily preclude the Plaintiff from performing light work or necessitate a finding of disability.

VII. **CONCLUSION**

Accordingly, the Court finds that the ALJ properly reviewed and weighed the evidence to determine Plaintiff is capable of performing light work — specifically, her past relevant work as a sewing machine operator and a cashier/hostess. Substantial evidence supports the ALJ's findings and conclusions. Therefore, it is hereby **RECOMMENDED**[3] that Plaintiff's Motion For Summary Judgment **[Doc. 13]** be **DENIED** and that the Commissioner's Motion for Summary Judgment **[Doc. 20]** be **GRANTED**.

Respectfully submitted,

s/ H. Bruce Guyton
United States Magistrate Judge

---

[3] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).